IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| KIRBY RANDALL CULP, § § § § Plaintiff, § § § § VS. § § § LIFE INSURANCE COMPANY § OF NORTH AMERICA, D/B/A § CIGNA GROUP INSURANCE, § ENSCO INTERNATIONAL § INCORPORATED, ENSCO § HEALTH PLAN, and § LISA GUTIERREZ, § § § Defendants. § | CIVIL ACTION NO. W-17-CV-010 |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, KIRBY RANDALL CULP, Plaintiff in the above styled and numbered action, complaining of LIFE INSURANCE COMPANY OF NORTH AMERICA D/B/A CIGNA GROUP INSURANCE, ENSCO INTERNATIONAL INCORPORATED, ENSCO HEALTH PLAN, and LISA GUTIERREZ, hereinafter "Defendants", and for cause of action would respectfully show the Court the following:

**I.
PARTIES**

1.01  Plaintiff, KIRBY RANDALL CULP ("CULP"), is an individual residing in McLennan County, Texas.

1.02   Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA, is a Pennsylvania insurance company licensed to do business in and doing business in Texas under the trade name of CIGNA GROUP INSURANCE ("CIGNA") and which may be served through its registered attorney for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Dallas County, Texas 75201.

1.03   Defendant, ENSCO INTERNATIONAL INCORPORATED ("ENSCO"), is a Texas corporation with its principal place of business in Houston, Harris County, Texas, and may be served through its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas County, Texas 75201.

1.04   Defendant, ENSCO HEALTH PLAN ("the PLAN"), is a trust existing pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1332(d), and pursuant thereto, is a proper party to this suit, and which may be served with process by serving the Plan Trustee, Plan Administrator, or the Secretary of the United States Department of Labor. On information and belief, the Plan Administrator and/or Plan Trustee of the ENSCO HEALTH PLAN is either Defendant ENSCO INTERNATIONAL INCORPORATED or LISA GUTIERREZ, both of whom are made parties hereto.

1.05   Defendant, LISA GUTIERREZ ("GUTIERREZ"), is an individual who, on information and belief, resides in Texas and who works and may be served at the offices of ENSCO International Incorporated, 5847 San Felipe, Suite 3300, Houston, Texas 77057.

## II.

## JURISDICTION AND VENUE

2.01   Jurisdiction is appropriate pursuant to 29 U.S.C. § 1132(e)(1), which provides that the District Courts of the United States shall have original jurisdiction of all civil actions brought

under Title 29 by a beneficiary of an ERISA plan, and pursuant to 28 U.S.C. § 1367(a), conferring jurisdiction over claims within the same case or controversy.

2.02   Venue is proper in the Western District of Texas, Waco Division, pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b), because the events made the basis of Plaintiff's claims occurred in whole or in part in the Western District of Texas, Waco Division.

### III.

### CONDITIONS PRECEDENT

3.01   All conditions precedent to recovery by Plaintiff herein have been performed, have occurred, or have been excused.

3.02   Plaintiff has exhausted all administrative remedies prior to bringing this suit.

### IV.

### AGENCY

4.01   Unless otherwise stated, whenever it is alleged that any corporate Defendant committed an act, failed to perform an act, made a representation or statement, or failed to make a disclosure, it is alleged that the corporate Defendant was acting or failed to act through its authorized agents, servants, employees, or representatives acting with either expressed, implied, apparant, direct, and/or ostensible authority, or that the Defendant subsequently ratified these acts, failures to act, representations, statements, or conduct.

4.02   At all times relevant herein, Defendant CIGNA acted as an authorized agent of the PLAN, GUTIERREZ and/or ENSCO with either expressed, implied, apparant, direct, and/or ostensible authority. Further, the PLAN, GUTIERREZ and/or ENSCO subsequently ratified the acts, failures to act, representations, statements, and conduct of Defendant CIGNA.

## V.

## FACTUAL BACKGROUND

5.01    Defendant ENSCO operates floating offshore drilling rigs or "barges" in the Gulf of Mexico. Plaintiff CULP worked on these offshore rigs for Defendant ENSCO for 35 years until his employment was terminated due to his disability from severe osteoarthritis in his wrists and hands. As a barge engineer, Plaintiff CULP was part of a crew that was required to live on the offshore rig for weeks at a time. As the 2010 Deepwater Horizon disaster illustrates, working on these offshore drilling rigs is dangerous, life-or-death work. Having the physical ability to quickly evacuate the drilling rig down a long, steep ladder is a critical job requirement for crew members enforced by ENSCO. Crew members being free of the fog of prescription narcotic pain relievers–even when off-duty– is also a critical job requirement enforced by ENSCO. The mere presence of narcotic pain relievers is banned from all ENSCO drilling rigs, regardless of whether taken by prescription or used only while off-duty. The progression of Plaintiff CULP's severe osteoarthritis to the point where, in October 2014, he could no longer rely on his hands to quicky descend an emergency evacuation ladder nor function without reliance on narcotic pain relievers therefore spelled the end of Plaintiff CULP's career as a barge engineer.

5.02    Plaintiff CULP applied for and was quickly granted disability benefits from Defendants as well as from the Social Security Administration. Nevertheless, after just less than a year of paying monthly long term disability benefits to Plaintiff CULP, and despite there being no evidence of any improvement in Plaintiff' CULP's condition, Defendants abruptly stopped paying those benefits in October 2015. This lawsuit is the latest step in the appeals process to get Plaintiff's long term disability benefits reinstated.

5.03    On or about February 1, 1988, Defendant ENSCO established the PLAN as a

qualifying trust under the Employee Retirement Income Security Act of 1974 ("ERISA") to set aside funds and to provide employee benefits, including long-term disability benefits, to its employees.

5.04   As part of his employment contract with ENSCO, Plaintiff CULP was provided employee benefits by ENSCO, including long-term disability insurance benefits through the PLAN.

5.05   On or about January 1, 2000, Defendants ENSCO, GUTIERREZ (or her predecessor) and CIGNA entered into one or more contracts whereby Defendant CIGNA agreed to provide and/or administer some of the long-term disability insurance benefits promised to Plaintiff CULP and other ENSCO employees through one or more group insurance policies for long-term disability benefits.

5.06   One such group long-term disability insurance policy issued to the PLAN by Defendant CIGNA for the benefit of ENSCO employees is Policy No. LK-030367 ("the Policy").

5.07   At all times relevant herein, Plaintiff CULP paid or tendered each of the monthly premiums for long term disability benefits to Defendants as required under the Policy. Plaintiff Culp was an actual or intended beneficiary of the contracts so entered and policies so issued, including the Policy at issue herein.

5.08   Defendants, through the Policy, contracted to provide Plaintiff CULP with monthly disability payments if he became "Disabled" as defined by the Policy. As amended effective January 1, 2010, an employee like Plaintiff CULP was considered "Disabled" if "solely because of Injury or sickness, [he became] (1) unable to perform all the material duties of [his] Regular Occupation; and (2) unable to earn 80% or more of [his] Indexed Earnings from working in [his] Regular Occupation." "Regular Occupation" is defined in the Policy as "the occupation the Employee routinely performs at the time the Disability begins."

5.09   Around 2002, Plaintiff CULP began experiencing what was then diagnosed by Dr. Brian Sayers, a rheumatologist in Austin, Texas, as progressive bone-on-bone osteoarthritis in both

of his wrists which causes severe pain.  Over the next 12 years, Plaintiff CULP sought treatment from various doctors. After years of disease progression, the grinding of this bone-on-bone osteoarthritis in conjunction with neuropathy became agonizing and debilitating to Plaintiff so that he could no longer perform the routine requirements of his occupation as a barge engineer on Defendant ENSCO's offshore drilling rigs.

5.10    In  July 2014, Dr. Sayers observed that Plaintiff CULP's osteoarthritis was "especially severe in the wrists," and noted that "he has difficulty gripping, grasping, doing work overhead, squatting and twisting."   Dr. Sayers then opined, "At this point [he did] not feel that [Plaintiff was] physically able to continue his current work safely."

5.11    Dr. Elizabeth Turnage of Waco, Texas, Plaintiff CULP's primary care physician for of many years, followed the progression of his disease and tried to treat it as best as possible with anti-inflammatory pain medication, physical therapy and limited activity.  In July 2014, Dr. Turnage noted that Plaintiff "is not able to use his hands to support any weight, manipulate knobs and equipment, nor protect himself while climbing up and down ladders."  Knowing his specific job requirements, she further observed that Plaintiff was "disabled from his former work on the oil rig" as each of these activities are requisites of Plaintiff's occupation as a barge engineer.

5.12    During this same time frame, Dr. Turnage prescribed Plaintiff CULP three strong narcotic pain relievers–Fentanyl, Tramadol and Hydrocodone–for intermittent break-through pain.

5.13    Defendant ENSCO's Corporate Safety, Health & Environment policy prohibits the use or possession of narcotics on its offshore drilling rigs.  Defendant ENSCO is not alone in this restriction.  As such, Plaintiff CULP was prohibited from even bringing his prescriptions onto the barges where he worked.  Since he was required to remain on the barges for weeks at a time in order to perform his duties as Barge Engineer, his condition  requiring for narcotic pain medication

effectively disqualified Plaintiff CULP from any work on any offshore oil rig.

5.14   On or about July 16, 2014, Plaintiff CULP informed Defendant ENSCO that he was unable to return to work due to the severity of the osteoarthritis in his wrists, the debilitating neuropathy, and the inability to go out on a barge without his narcotic pain prescriptions. Soon thereafter, Plaintiff CULP initiated a claim with Defendants for short-term disability benefits.

5.15   On or about September 5, 2014, Defendant CIGNA approved Plaintiff CULP'S claim for short-term disability insurance benefits after determining that Plaintiff satisfied the same or similar standard for being "Disabled" under the Policy.

5.16   On or about October 8, 2014, Plaintiff CULP initiated a claim with Defendants for long-term disability insurance benefits under the Policy.

5.17   On or about November 4, 2014, Defendant CIGNA approved Plaintiff's claim for long-term disability insurance benefits, again determining that Plaintiff satisfied the conditions for being "Disabled" as defined in the Policy. Plaintiff CULP subsequently qualified for permanent disability benefits through the Social Security Administration.

5.18   However, on June 19, 2015, despite there being no improvement in Plaintiff's condition, despite Plaintiff's continued reliance on narcotic prescriptions for pain management, and with no now medical information, Defendant CIGNA unilaterally discontinued payment of Plaintiff's long-term disability insurance benefits. In doing so, Defendant CIGNA incorrectly relied on an out-dated and superceded definition of "Disabled," found in a January 1, 2008 version of the Policy which included a requirement that the claimant show he was "unable to perform all the material duties of his or her Regular Occupation *or a Qualified Alternative*; and unable to earn 80% or more of his or her Indexed Covered Earnings." [Emphasis added.]

5.19   However, as previously noted, the Policy was amended in 2010 to eliminate the

"Qualified Alternative" provision and to strictly tie the definition of "Disabled" to the Employee's "Regular Occupation." Since January 1, 2010, and at all times relevant to CULP's claim, the definition of "Disabled" in the Policy reads as follows:

> **Definition of Disability/Disabled:** The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> 1. Unable to perform all the material duties of his or her Regular Occupation; and
>
> 2. Unable to earn 80% or more of his or her Indexed Earnings *from working in his or her Regular Occupation.* [emphasis added.]

5.20   On or about July 20, 2015, Plaintiff CULP sent a letter to Defendant CIGNA appealing of Defendant's denial of his claim for long-term disability insurance benefits and supplemented the letter with medical records that supported his continued disability.

5.21   On or about October 15, 2015, Defendant CIGNA advised Plaintiff of its decision to affirm its denial of his claim for long-term disability insurance benefits, again citing to the superceded 2008 definition of "Disabled."

5.21   After receiving the notice of this denial, Plaintiff CULP sought legal representation. By letter dated April 12, 2016, the undersigned counsel, on behalf of Plaintiff CULP, advised Defendant CIGNA of Plaintiff's intent to appeal this decision, and, in so doing, pointed out CIGNA's error in relying on the superceded 2008 definition of "Disabled."

5.22   On or about July 20, 2016, Defendant CIGNA advised the undersigned counsel of its decision to affirm its denial of Plaintiff's claim for long-term disability insurance benefits, despite receiving medical records that supported Plaintiff's disability in accordance with the terms of the Policy. In doing so, Defendant CIGNA reiterated its reliance on an opinion from a vocational specialist who was still applying the wrong definition of "Disabled" from the superceded Policy

language from 2008 and opining that Plaintiff CULP could still perform the material duties of other jobs, such as a "Gate Guard" or "Information Clerk." In considering Plaintiff CULP's appeal, Defendant CIGNA further failed to give any consideration whatsoever to the particular requirements of Plaintiff CULP's job duties as Barge Engineer at Defendant ENSCO, like the critical requirements he be able to evacuate an off-shore oil rig by rapidly descending a vertical ladder in an emergency and the he be able to refrain from any use of narcotic pain reliever for weeks on end while residing on the off-shore rig.

5.23   Despite having received the requisite premium payments under the Policy and/or the PLAN from Plaintiff as well as medical records that support Plaintiff's compliance with the Policy's standard for disability/disabled, Defendants have continued to deny Plaintiff CULP's claim for long-term disability insurance benefits in breach of the Policy and/or in violation of the PLAN.

## VI.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

6.01   Plaintiff repeats and realleges the factual allegations in the preceding paragraphs.

6.02   One or more of the Defendants contracted with Plaintiff CULP to provide the long-term disability insurance benefits described above.

6.03   Plaintiff CULP was either a party to or an intended beneficiary of that contract.

6.04   Plaintiff CULP fully performed his obligations under the contract.

6.05   One or more of the Defendants breached the contract by failing to pay the long-term disability insurance benefits to Plaintiff CULP as contracted after Plaintiff satisfied the standard for "disability/disabled" under the Policy.

6.06   As a result of this breach, Plaintiff has suffered damages, for which he sues.

## VII.

## SECOND CAUSE OF ACTION:

## ERISA DENIAL OF EMPLOYEE BENEFIT PLAN BENEFITS

7.01   Plaintiff repeats and realleges the factual allegations in the preceding paragraphs.

7.02   Defendant ENSCO has adopted an employee benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA") for the provision of long-term disability insurance benefits for its eligible employees.

7.03   Defendant ENSCO is the plan sponsor of the PLAN.

7.04   Defendant GUTIERREZ is the plan administrator of the PLAN.

7.05   Plaintiff CULP was an employee of Defendant ENSCO and beneficiary of the PLAN.

7.06   As of July 16, 2014, Plaintiff CULP was enrolled in the PLAN and, thus, entitled to receive long-term disability insurance benefits under the PLAN.

7.07   Plaintiff CULP has paid all costs due for the long-term disability insurance benefits as directed by Defendants, and Defendants accepted and continue to accept the payments of those costs for the long-term disability insurance benefits.

7.08   On or about October 8, 2014, Plaintiff CULP initiated a claim with Defendants for long-term disability insurance benefits under the Policy and/or the PLAN.

7.09   On or about November 4, 2014, Defendants approved Plaintiff CULP'S claim for long-term disability insurance benefits, effectively determining that Plaintiff CULP was disabled and eligible to receive 60% of his weekly earnings in long-term disability benefits under the Policy and/or the PLAN.

7.10   Despite there being no change in Plaintiff's diagnosis or condition, on or about June 19, 2015, Defendants unilaterally terminated Plaintiff's long-term disability insurance payments

effective June 14, 2015, incorrectly using a superceded definition for "Disabled" contrary to the plain language of the Policy and/or the Plan as the basis for their decision.

7.11    Despite two additional appeals of their decision, Defendants have steadfastly affirmed their denial of Plaintiff's long-term disability insurance payments, continuing to cite to and rely on a standard for "Disabled" other than that stated in the Policy and/or the Plan.

7.12    Under the Policy and/or the PLAN, Plaintiff CULP was entitled to be paid long-term disability insurance benefits of $6,203.67 per month from June 15, 2015 onward until satisfaction of the provisions under the Policy and/or the PLAN that would constitute termination of the benefits.

7.13    By their act and omissions detailed above, all of the Defendants have denied Plaintiff CULP the employee benefits payable under the Policy and the PLAN in violation of his rights as given by ERISA, for which he sues.

## VIII.
## ATTORNEY'S FEES

8.01    Plaintiff further seeks recovery of reasonable and necessary attorney's fees incurred in the prosecution and trial of this action and any appeal therefrom.

8.02    Plaintiff seeks recovery of his reasonable and necessary attorneys' fees to be awarded by the Court pursuant to 29 U.S.C. § 1132(g).

## IX.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendants be served with the Summons and Complaint in this action and be required to answer and appear herein, that Judgment be entered herein as follows:

a)    Against Defendants, jointly and severally for all damages resulting to Plaintiff from

   their breach of contract;

b) Against Defendants, jointly and severally, for long-term disability insurance benefits to which Plaintiff is entitled under the Policy or PLAN;

c) Against Defendants, jointly and severally, for all long-term disability insurance benefits which should have been paid to Plaintiff but for Defendants' acts and/or omissions;

d) Against all Defendants, an award of Plaintiff's attorney's fees, costs of court, prejudgment and post-judgment interest as allowed by law; and,

e) Such other and further relief to which Plaintiff may show himself justly entitled.

## X.

## JURY DEMAND

Plaintiff hereby requests a jury on all triable issues.

Respectfully submitted,

/s/ David G. Tekell
David G. Tekell
State Bar No. 19763950
TEKELL & ATKINS, L.L.P..
5400 Bosque Boulevard, Suite 600
Waco, Texas 76710
Telephone (254)776-5095
Facsimile (254)776-5091
david@tekellatkins.com

**ATTORNEY FOR PLAINTIFF**